Cardwell, Ch.
delivered the opinion of the Court.
The only question in this case is whether the Court has jurisdiction 1
The bill was filed by the plaintiif, as administrator of Joseph S. Shelton, against the defendant, for the specific delivery of five slaves, and for an account of their hire while in his possession ; it states that the intestate and defendant are insolvent, and the assets of the former will be insufficient to discharge the judgment debts against him at the time of his death; the answer does not controvert these facts, and defendant admits that he took into his possession the slaves in right of his minor children, Lewis S. Shelton and James B. Shelton, to whom the intestate in his life time had made a bona fide gift of the slaves, but retained the possession thereof as their trustee; that defendant did not convert the slaves to his own use, as charged in the bill, but held and still holds the possession of them, as the natural guardian of his children.
The object of the plaintiff is to obtain possession of the slaves, to dispose of them in the due course of administration, which will be to sell them, and to apply the proceeds to pay the debts of the intestate. The defendant insists that the plaintiff’s bill cannot be sustained for their specific delivery, as he has plain and adequate remedy at law. Whatever doubts were entertained as to the allegations and proofs necessary to sustain a bill for the specific delivery of slaves before the decision of the Court of Errors in Young v. Burton, there *224 can be none now as to the two propositions established in that case.
1 Stroll. E. 334.
“1st. That a bill well lies for the specific delivery of slaves generally, which are withheld from the possession of the rightful owner.”
“2d. That it is sufficient to give jurisdiction to' the Court to state that the slaves are the property of the complainant, and that their possession is withheld by the defendant.”
In the previous cases in which the jurisdiction of this Court has been sustained, the bills uniformly stated the circumstan-7 ces that constituted the peculiar value of the slaves to the plaintiff, who could not have been adequately compensated by damages recoverable in an action at law; but it is now permanently settled that a bill will lie without alleging such circumstances, and that the presumption from the general statement will be that the slaves are of such peculiar value as to entitle the plaintiff to relief, unless the proof be sufficient to rebut it. If this case stood upon the single ground of an administrator filing a bill for the specific delivery of slaves that were to be sold to pay his intestate’s debts, and there was no auxiliary circumstance to support the jurisdiction, the objection to it might be sustained; an administrator so situated would probably not occupy a stronger position than a mortgagee, who cannot recover a slave specifically in this Court.
In Bryan and Richardson v. Robert, decided at May Term, 1847, Chancellor Harper, in delivering the opinion of a majority of the Court, said “there is a material misconception in supposing this a case in which a bill will lie for the specific delivery of a slave. The general principle is, when an owner has had possession of a slave, and has been deprived of it by the act of another, the general presumption is, that there may be some qualities in the slave which would render him. of more value to the owner than would be compensated by the price of such slave estimated at his mere marketable value. So where the party contracts for the purchase of specific slaves it is presumed that he may have made his contract with a view to some particular qualities in the slaves themselves, for which ordinary-damages would not be a sufficient compensation. Or, as in Trapier v. Glover, where one is entitled to the gift or limitation of a friend, relation, or ancestor, there is a very sufficient reason why he should have the slaves themselves instead of any damages for their estimated value. A general expression is used in one of the cases, that where a party states a defendant to be in possession of his slave, he states a case entitling him prima fade to-the interference of this Court. And so it is, but it must be taken with the qualifications which I have suggested from the context of the cases. An exception is made in the *225 cases, when it appears that, without any view to peculiar qualities, there is a contract for slaves, to be sold again as merchandize.”
g^j. v Mann, 1 Mc-Mul. R. 252.
6 Stat. ofS.C. ‘‘
tms is a good ground to rel° decree for^ancTto grant a lease, 7- Mc-Eng?’Ch’. 473.
It canuot be presumed that an administrator, any more than a mortgagee, would have either personal attachment to the slaves, or a knowledge of their peculiar qualities, so as to enhance their value and make it available to the estate, and as his duty requires him to apply such assets to the payment of debts, and to distribution, there would seem, ceteris pari-bus, to be no special reason why he should be entitled to a higher remedy than a mortgagee ; his proceeding for a specific delivery is merely to obtain possession, that he may sell and receive the marketable price of the slaves, and this object can be attained as well, if not better, by a verdict in trover, or trespass at law.
But let us examine whether the plaintiff can, under the circumstances of this case, have the plain and adequate remedy at law that divests this Court of jurisdiction.
Before the Act of 1827, to which the case of Norrell v. Corley (although finally decided after its passage) gave rise, a judgment in trover created no specific lien on the property whose value had been recovered; the Act was adopted to remedy this defect of the common law, and in some degree to give the plaintiff the benefit of a proceeding in rem, but was certainly not intended to deprive this Court of its jurisdiction. It is a familiar principle that where an Act of the Legislature confers jurisdiction on that Court, of cases that previously were within the jurisdiction of this Court, the former does not thereby obtain an exclusive, but a concurrent jurisdiction. Proceedings in partition and dower are common illustrations; the same rule prevails where by the practice of the other Court issues are made up and questions are tried at law, that might be made the subject matter of a suit in Equity, such as setting aside a judgment at law for fraud.
By the terms of the Act of 1827, the Sheriff may be required by the plaintiff “to cause the defendants to enter into bond with sufficient security to the Sheriff of the district in which such action shall be brought, for the production of the chattel sued for, to satisfy the plaintiff’s judgment in case he should recover against the defendant or defendants; and such specific chattel shall be liable to satisfy the plaintiff’s judgment, to the exclusion of other creditors.” Although this was an improvement in the action of trover, it was not anticipated that it would provide an adequate remedy in every case; it would clearly be altogether inapplicable to a case equitable rights subsisted between the parties, and-in many other eases would be utterly inefficient: take the case of a defendant who is insolvent; suppose that he should ciously resist process or evade its effects by refusing to give *226 the bond and sureties, or is involuntarily unable to comply with the requisitions of the Act, the efficacy of the remedy would be much impaired; in the interim the property could not be seized or secured by any proceeding at law, although it may be in never so much peril, pendente lite. But let us transfer the case to this Court and draw the parallel between the jurisdictions ; here there are the most ample powers to remove any of these impediments in the plaintiff’s way, and to prevent the irreparable injury that might resu.t from either its removal or destruction ; and even its use and services may be so secured, that the plaintiff, if successful, may receive the benefit, independently of the defendant’s insufficiency to pay the damages that might be recovered at law. When it is argued that the plaintiff at law may imprison the defendant perpetually, even that is often a very unsubstantial satisfaction. None would prefer it from humanity, and few from interest, as a substitute for the property, or its value. From the different organizations of the Courts, not only the means, but the mode and measure of redress, in this Court are decidedly more ample and adequate than can be administered at law. When the account is taken for the hire of the slaves, it is not left to the hasty calculation of a Jury, who from their organization, number, and mode of hearing the case, have neither the means, time, or experience so necessary to adjust an account accurately; with them it frequently becomes a mere striking of averages rather than an exact estimate of hire; but in this Court there is an officer whose ability and experience often eminently qualify him to examine with care the evidence that may be offered, and after having subjected every item to the strictest scrutiny, he can call the parties and their counsel before him, submit his report, and consider their exceptions to it, so that if there be omission, inadvertence, error or mistake in adjusting the account, they may be remedied and corrected. After the judgment and execution have been obtained at law, the defendant may withhold or remove the property, and if he be insolvent the plaintiff is at an end of his remedy,, unless he resorts either to a ca. sa. against his person, or to an action on the bond, which of course increases the delay and expense, that are no inconsiderable objects in every suit. No Court has such ample, expeditious or adequate means and measures of redress as that of Equity, where, by a single suit, not only the slaves and their hire can be secured, but any right, interest or estate in them, whether legal or equitable, may be brought forward and determined between all the parties interested. On the ground of the defendant’s insolvency, this bill is clearly sustainable; if it had been framed merely as ancillary to an action at law to secure the slaves and their hire, it might probably have been supported, had such circumstances been *227 stated as would show the property was in peril. In this case the defendant’s answer in some degree strengthens the plaintiff’s claim to redress; it denies the conversion while it admits that the defendant took possession of the property as the natural guardian of his sous. No proof was offered of the alleged gift, and as the children were not made parties in this case, their rights cannot be considered; but the defendant certainly, from his own showing, has no legal or equitable right to the possession of the slaves. Whatever rights the intestate had at his death devolved upon his administrator, who is responsible for the administration of his assets, and as the statute of limitations would now be a bar to a suit at law, and the plaintiff is clearly entitled to the possession of the slaves and to the value of their hire, it might operate as an irreperable injury of the creditors of the estate if this bill be dismissed. The decision in this case does not impair the rights of the defendant’s sons, but merely restores the property where it ought to be, in the possession of the legal representative of Joseph S. Shelton, who died in possession of it.
It is therefore ordered and decreed that the appeal be dismissed, and the circuit decree be affirmed.
JohnstoN, Ch. and Dargan, Ch. concurred.
Dunicin, Ch. absent at the hearing.

Decree affirmed.